(C. D. 352)

Bloch Freres, Inc. v. United States

United States Customs Court, Second Division

(Decided June 10, 1940)

*Brooks & Brooks* (*Frederick W. Brooks, Jr.*, of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: The merchandise here in controversy is invoiced as handkerchiefs in pieces. According to the red-ink notation on the invoice it was returned as being in chief value of cotton, and *appears* to have been assessed for duty at 40 per centum ad valorem, plus 10 cents a pound, under paragraphs 918, 923, and 924 of the Tariff Act of 1930. The merchandise is claimed to be dutiable at 35 per centum ad valorem under paragraph 1016, as "handkerchiefs, wholly or in chief value of vegetable fiber, except cotton, finished or unfinished, not hemmed."

The sole issue for our determination is therefore whether the imported handkerchiefs are in chief value of cotton, as returned, or in chief value of linen, as claimed by the importing company, Bloch Freres, Inc., which company also appears to be the shippers of the merchandise at Paris, France.

A commission was issued herein at the request of the plaintiff to take the depositions of Alcide Cattelain and Mr. E. Pochet at Lille, France, both deponents being of Caullery, France. Said depositions have since been returned and introduced in evidence herein as Exhibit 1, subject to the Government's right to object to any question and answer on the ground of immateriality or irrelevancy.

Said depositions are the only evidence in the case on the question of the component material of chief value in the handkerchiefs. As to proof of component material of chief value in an imported article, it seems, however, to fall far short of the legal requirements.

For instance, deponent Alcide Cattelain states that he retired from business September 1, 1936, and that before then he was sole proprietor of the business known as "Alcide Cattelain." In reply to interrogatory No. 4, as to whether he delivered to Bloch Freres, Inc., of New York City, through Bloch Freres, Inc., of Paris, the items of merchandise here in quesion, he states that he has no record of such merchandise, but that he received from Bloch Freres a sample of each item number, and that as an expert he has been able to determine the cost of handkerchiefs of like quality in 1936. Again, in reply to interrogatories No. 5 and No. 6, as to whether he had personal knowledge of the methods of manufacture, the cost of materials used, and

the labor costs of producing said items, he states that he has personal knowledge of the method of manufacture, the cost of the materials used, but not the labor costs of producing the type of the items mentioned, as there "is so much variation between one order and another."

Deponent Pochet, in reply to interrogatory No. 2, states that he is a handkerchief and cloth manufacturer, and is sole owner of the business known as "E. Pochet." In reply to interrogatory No. 4, as to whether he delivered to Bloch Freres, Inc., of New York City, through Bloch Freres, Inc., of Paris, the items of merchandise here under consideration, he states that he is not able to tell whether he actually shipped this merchandise or not; that he knows in 1936 he made shipments to Bloch Freres, but whether they were identical with the items in question he could not say. He does say that Bloch Freres sent him a sample of each of the item numbers, and that from them, as an expert, he has gone back over his records and determined as accurately as possible what similar materials would have cost in 1936. That for this purpose he has used the average price of cotton and flax for the year 1935.

In reply to interrogatory No. 5, as to whether he had personal knowledge of the methods of manufacture, the cost of the materials used, and the labor costs of producing the items referred to, the same deponent states that he has personal knowledge of the methods of manufacture, and also the cost of the materials used, but that he has not the labor costs of producing items similar to those in question.

On the strength of their limited knowledge of the cost, etc., of "similar" merchandise, both of said deponents have set forth in separate but identical schedules attached to the returned commission (Exhibit 1) their findings of the respective values of the linen and the cotton in said item numbers, which in four instances show flax to be of greater value than the cotton, and in six instances show cotton to be of greater value than the flax in the handkerchiefs.

In the case of *United States* v. *Bacharach*, 18 C. C. P. A. 353, T. D. 44612, the merchandise involved consisted of a certain lamp with a wooden base and a silk shade, the shade being in part of braid. On the question of the component material of chief value, the court stated as follows:

The collector's classification and assessment of duty under paragraph 1430 [Act 1922] raised the presumption that the component material of chief value was yarns, threads, or filaments, and this fact, when not shown to be incorrect, is determinative of the question. *United States* v. *Bernard, Judae & Co.*, 15 Ct. Cust. Appls. 172, T. D. 42231. The rule has long been settled that the proper method of determining component material of chief value is by determining the value of the separate parts of the article at the time when they are ready to be combined to make the completed article. "Value," when used in this connection, does not relate to the dutiable value of the component materials, but to the cost of

such components to the manufacturer of the completed article. There was no proof in this case establishing such a value, and the presumption arising from the collector's classification was not overcome.

Again, in *United States* v. *Rice-Stix Dry Goods Co.*, 19 C. C. P. A. 232, T. D. 45337, covering certain atomizers composed of colored or decorated glass, metal, rubber, and silk, which were assessed for duty under paragraph 218 of the Tariff Act of 1922, as articles composed wholly or in chief value of glass, the merchandise was claimed to be dutiable under paragraph 399 of said act, as articles in chief value of metal. We quote from that decision as follows:

This court has repeatedly held that the proper method of determining component material of chief value is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the completed article.

In the present case we think it is only too obvious that the depositions entirely fail to show the value or the cost to the manufacturer of the separate parts or components of the handkerchiefs at the time such components were ready to be assembled or combined, and there is, therefore, no competent evidence before us to establish the component material of chief value in the handkerchiefs. That being so, the presumption of correctness attending the collector's classification herein has not been overcome.

The protest is therefore overruled. Judgment will be rendered accordingly.